# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Cepero v. Illinois State Board of Investment*, 2013 IL App (1st) 120919

| | |
|---|---|
| Appellate Court Caption | ROBERT LOPEZ CEPERO, Plaintiff-Appellant, v. ILLINOIS STATE BOARD OF INVESTMENT, an Administrative Agency of the State of Illinois; WILLIAM R. ATWOOD, Executive Director of the Illinois State Board of Investment; KATHERINE A. SPINATO, Deputy Director of the Illinois State Board of Investment; JOHN W. CASEY, FRED MONTGOMERY, THOMAS E. HOFFMAN, and MICHELE BUSH, Members of the Executive Committee of the Illinois State Board of Investment; LINSEY SCHOEMEL, Hearing Officer of the Illinois State Board of Investment; THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, an Administrative Agency of the State of Illinois; JAMES P. SLEDGE, Director of the Department of Central Management Services; KIM BLOCK, Assistant Division Manager Deferred Compensation Staff of the Department of Central Management Services; and JASON MUSGRAVE, Executive Secretary Deferred Compensation Hardship Committee of the Department of Central Management Services, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0919 |
| Filed | March 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of plaintiff's request for a hardship withdrawal of his deferred compensation account was upheld, notwithstanding his contention that an "unforeseeable emergency" arose when his wife became pregnant with triplets as a result of in vitro fertilization and he would have to purchase a new home for his family, since that situation did not constitute an "unforeseeable emergency" for purposes of the provisions of the Illinois Administrative Code governing deferred compensation plans. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-20189; the Hon. Rita Mary Novak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tracy A. Robb, of Law Offices of Tracy A. Robb, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Harris and Justice Quinn concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff Robert Cepero appeals from an order of the circuit court of Cook County affirming the decision of the Illinois State Board of Investment (Board) to deny his request for a hardship withdrawal from his deferred compensation account. On appeal, plaintiff contends that the denials of his hardship withdrawal request by the Board and the Deferred Compensation Hardship Committee (Committee) are clearly erroneous in light of overwhelming evidence that he was experiencing a financial hardship as the consequence of an unforeseeable emergency at the time. For the reasons that follow, we affirm.

¶ 2                             BACKGROUND

¶ 3     On January 12, 2011, plaintiff filed a hardship withdrawal request for the balance of his deferred compensation account, totaling $104,007.82, due to an unforeseeable emergency. Plaintiff asserted that his wife, Elizabeth, was pregnant with triplets as a result of a successful in vitro fertilization (IVF) and had reached her twenty-second week of pregnancy. Due to the medical complications of such a pregnancy, Elizabeth was required to go on unpaid medical leave no later than January 20, 2011, and likely could not return to work until December 19, 2011, resulting in $113,972.91 in lost wages. Plaintiff maintained that the triplet pregnancy was unforeseeable because he and Elizabeth had a long history of infertility and repeated failed IVF attempts over the past decade and that the pregnancy caused a financial emergency due to the combination of Elizabeth's lost wages and the additional

costs of caring for the triplets, including necessary 24-hour child care assistance and modifications to plaintiff's loft condominium. On February 3, 2011, the Committee denied plaintiff's request for a hardship distribution because Elizabeth had not yet lost any income and requested that plaintiff notify it when Elizabeth began her leave of absence.

¶ 4 　　On February 24, 2011, plaintiff filed a hardship withdrawal request for the balance of his deferred compensation account for a down payment on a home. Plaintiff asserted that the purchase of the home was necessitated by the impending birth of the triplets because his current condominium had an open floor plan and only one bedroom with four walls, the condo could not be modified to include a second bedroom with four walls, his request to construct a temporary bedroom had been rejected by the condo association, and the size of his family would exceed the design capacity of the condo upon the birth of the triplets. Plaintiff maintained that he did not have sufficient funds to purchase a home and that the need to buy a new home was caused by unforeseeable circumstances arising from events beyond his control. Plaintiff also maintained that the maximum occupancy of his condominium was three and that no reasonable person could have anticipated the birth of triplets because the odds against such a pregnancy were 784-to-1 and it was unlikely that the IVF attempt would be successful where multiple prior IVF attempts had failed. On March 17, 2011, the Committee denied plaintiff's request for a hardship distribution, finding that his situation did not meet the criteria for an unforeseeable emergency and noting that the purchase of a home did not qualify as such an emergency.

¶ 5 　　Plaintiff appealed that decision to the Board and alleged that the Committee incorrectly determined that the purchase of a home does not qualify as an unforeseeable emergency and that such an emergency existed in this case where Elizabeth's pregnancy with triplets and plaintiff's inability to modify his condominium to accommodate the triplets were unforeseeable. On April 26, 2011, a hearing was conducted on plaintiff's appeal, and the hearing officer then prepared a report of its findings of fact based on plaintiff's testimony and other evidence presented at the hearing.

¶ 6 　　In that report, the hearing officer related that Elizabeth gave birth to premature triplets in April 2011, the children were in the process of being released from the hospital, and Elizabeth had been diagnosed with a heart condition that limited her mobility and required the hiring of a nanny, which would cost about $4,000 per month. Plaintiff lived with Elizabeth and their four year-old daughter in a condominium, which had an open floor plan and contained one bedroom with four walls and a lofted master bedroom. Plaintiff put his residence on the market in December 2010 in anticipation of the birth of the triplets, but was unable to secure a purchaser or renter for the unit. Plaintiff retained an architect to modify the condominium to accommodate the triplets, but on January 28, 2011, the architect told plaintiff that he could not design such a modification in compliance with the Chicago building code. Plaintiff sought permission from the condo association to construct a temporary bedroom in his unit, but on February 18, 2011, that request was denied. Plaintiff contacted his current mortgage provider and learned that he would likely be required to provide a lender with at least 25% of the purchase price of a new home as a down payment. Plaintiff was unable to rent suitable housing because he did not have access to sufficient funds absent the rental or sale of his current residence and the health risks associated with

premature babies required that he reside near Northwestern Hospital and avoid subjecting the triplets to multiple moves.

¶ 7    On May 9, 2011, the Board denied plaintiff's request for a hardship withdrawal to purchase a home, finding that while certain circumstances may warrant a distribution to purchase a home, this case did not constitute an unforeseeable emergency. The Board found that it was not unforeseeable that an IVF would result in multiple pregnancies and that although plaintiff had experienced many failed IVF attempts in the past, the use of IVF and the resulting pregnancy were not beyond plaintiff's control. The Board also found that Elizabeth's medical condition constituted an unforeseeable emergency, but determined that a distribution could not be granted "until either a loss of income or unreimbursed medical expense is incurred."

¶ 8    On June 26, 2011, plaintiff filed a petition for a writ of *certiorari* with the circuit court alleging that the Board's decision was against the manifest weight of the evidence and contrary to fact and law and asking for judgment in his favor. On February 16, 2012, the court conducted a hearing on the petition and affirmed the Board's decision, finding that it was not unforeseeable that an IVF might result in a pregnancy with triplets and that the addition of even a single child to plaintiff's residence would have caused difficulty for plaintiff's family due to the small size of his condominium.

¶ 9                                          ANALYSIS

¶ 10   On appeal, plaintiff contends that the decisions of the Board and the Committee to deny his hardship withdrawal request are clearly erroneous in light of overwhelming evidence that he was experiencing a severe financial hardship as the consequence of an unforeseeable emergency at the time of his request. The standards of review under a common law writ of *certiorari* are essentially the same as those under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)). *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). On administrative review, an appellate court reviews the final decision of the administrative agency, and not the decision of the circuit court. *Nichols v. Chicago Transit Authority Hardship Committee*, 338 Ill. App. 3d 829, 831 (2003). The applicable standard of review to apply on review of an administrative agency decision depends on whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 11   The parties agree that the issue in this case requires an examination of the legal effect of a given set of facts and, therefore, presents a mixed question of fact and law. As such, we will review the Board's decision under a clearly erroneous standard of review. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). An agency's decision will be deemed clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 12   The State of Illinois Employees' Deferred Compensation Plan allows an employee of the State of Illinois to designate a portion of his or her salary to be withheld each month and invested in a manner approved by the Board and in compliance with section 457 of the

Internal Revenue Code (26 U.S.C. § 457 (2006)). 80 Ill. Adm. Code 2700.110(a) (2009). A distribution from an employee's deferred compensation account shall be permitted in the event the employee experiences an unforeseeable emergency. 80 Ill. Adm. Code 2700.740(a), amended at 33 Ill. Reg. 13451 (eff. Sept. 14, 2009). An "unforeseeable emergency" is defined as a severe financial hardship to the employee resulting from an unexpected illness or accident of the employee or a dependent, loss of the employee's property due to casualty, "or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the [employee]." 80 Ill. Adm. Code 2700.200(a), amended at 33 Ill. Reg. 13451 (eff. Sept. 14, 2009). Although the purchase of a home generally will not qualify as an unforeseeable emergency, the imminent foreclosure of or eviction from the employee's primary residence may constitute such an emergency. 26 C.F.R. § 1.457-6(c)(2)(i) (2011).

¶ 13     Plaintiff asserts that the Committee's decision was clearly erroneous because it was not supported by legal or factual analysis. The Committee is responsible for determining whether an employee is entitled to a distribution due to an unforeseeable emergency (80 Ill. Adm. Code 2700.320(a) (2009)), and the Board is responsible for resolving all benefit claims and claims appeals (80 Ill. Adm. Code 2700.310(a)(8), amended at 33 Ill. Reg. 13451 (eff. Sept. 14, 2009)). Here, the Committee denied plaintiff's request for a hardship distribution, plaintiff appealed that denial to the Board, a hearing was conducted on plaintiff's appeal, and the Board resolved plaintiff's appeal by denying his request. As such, the Board's denial of plaintiff's request for a hardship withdrawal was the final administrative decision on the matter and, as such, we will limit our review to the Board's decision and will not consider the decision of the Committee. *Nichols*, 338 Ill. App. 3d at 831.

¶ 14     Plaintiff next asserts that the Board's decision is clearly erroneous because its finding that the possibility of multiple pregnancies resulting from IVF was not unforeseeable had no evidentiary basis where the odds of a pregnancy resulting in triplets were 784-to-1. We initially note that because plaintiff's condominium had a maximum occupancy of three and contained two bedrooms, only one of which had four walls, the birth of a single child would have caused plaintiff's family to exceed the condo's maximum occupancy and that any multiple birth, not just a birth of triplets, therefore, would have caused a housing crisis. Also, the odds set forth by plaintiff regarding the chances of a pregnancy resulting in triplets do not accurately reflect the likelihood of such a development in this case because those odds, as plaintiff states in his withdrawal request, include both natural and IVF pregnancies. In fact, the website cited by plaintiff relates that there is about a 19% chance that an IVF pregnancy will result in twins and a 4% chance an IVF pregnancy will result in triplets (Childbirth Solutions, Fact Sheet: In Vitro Fertilization (IVF), *available at* http://childbirthsolutions.com/articles/fact-sheet-in-vitro-fertilization-ivf (last visited Feb. 27, 2013)),[1] and those estimates are roughly consistent with the data showing that the chances of a multiple pregnancy are higher in IVF pregnancies than in non-IVF pregnancies (see Centers for Disease Control and Prevention, National ART Success Rates, *available at*

[1]While the fact sheet says that "about 50% are singletons, 24% are twins and 5% are triplets or more," it appears that those percentages represent proportions of a total of 78% of IVF pregnancies that result in a live birth.

http://apps.nccd.cdc.gov/art/Apps/NationalSummaryReport.aspx (last visited Feb. 27, 2013); Laura A. Schieve, Herbert B. Peterson, Susan F. Meikle, Gary Jeng, Isabella Danel, Nancy M. Burnett, Lynne S. Wilcox, *Live-Birth Rates and Multiple-Birth Risk Using In Vitro Fertilization*, 282 JAMA 1832 (1999), *available at* http://jama.jamanetwork.com/article.aspx?articleid=192105 (last visited Feb. 27, 2013)). Further, regardless of the exact odds, it is common knowledge that a pregnancy may result in twins or triplets, and we determine that the Board's finding that the possibility of multiple pregnancies resulting from IVF was not unforeseeable is not clearly erroneous.

¶ 15 Plaintiff next asserts that the Board's determination that the use of IVF and the resulting pregnancy were within his control ignores the fact that the emergency at issue was caused by a multitude of unforeseen factors. Plaintiff maintains that the Board incorrectly determined that, because the decision to pursue IVF was within plaintiff's control, any consequences which flowed from that decision, no matter how unlikely, were not unforeseeable. The Board, however, clearly stated in its decision that Elizabeth's medical condition, which was a consequence of her pregnancy and the birth of the triplets, constituted an unforeseeable emergency and appears to have subsequently granted plaintiff a hardship withdrawal on that basis. In this case, the Board found that the alleged housing emergency was not unforeseeable given the possibility of multiple births resulting from IVF and the small size of plaintiff's condominium, and the record does not support plaintiff's claim that the Board ignored certain factors in reaching its decision.

¶ 16 To the extent plaintiff further asserts that the Board improperly found that the proposed use of the withdrawal to purchase a home was a *de facto* bar to a hardship distribution, that claim is contradicted by the record. In its decision, the Board acknowledged that "there are certain circumstances which may warrant a distribution in order to purchase a home," but found that the circumstances in this case did not constitute an unforeseeable emergency. As such, the Board did not treat the proposed use of the funds to purchase a home as a *de facto* bar to a distribution, and we conclude that the Board's denial of plaintiff's request for a hardship withdrawal to purchase a home is not clearly erroneous.

¶ 17                                                                CONCLUSION

¶ 18 Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 19 Affirmed.